IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| John Anthony Castro, | ) | C/A No.: 3:23-4501-MGL-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Donald John Trump; SC Elections | ) | REPORT AND |
| Commission, Executive Director | ) | RECOMMENDATION |
| Howard M. Knapp, and South | ) | AND ORDER |
| Carolina Republican Party, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

John Anthony Castro ("Plaintiff") states he is a "Republican primary presidential candidate" for the 2024 Presidential election, argues that Donald John Trump ("Trump") is disqualified from serving as President of the United States under Section 3 of the 14th Amendment to the United States Constitution, and asks this court: (1) to declare the South Carolina Republican Party's ("SCGOP") $50,000 fee unconstitutional and issue an injunction preventing the SCGOP from enforcing it ("Filing Fee Claim"); (2) to declare "all state Presidential ballot access laws as unconstitutional based on inconsistency" as a violation of Plaintiff's right to equal protection as guaranteed by the 14th Amendment to the Constitution ("Equal Protection Claim"); and (3) to issue an injunction preventing South Carolina Election

1

Commission ("SEC") Executive Director Howard M. Knapp ("Knapp") (collectively "Election Defendants")[1] from accepting or processing Trump's ballot access documentation ("Ballot Claim"). [ECF No. 19 ¶¶ 2, 20–22, 24].[2]

This matter comes before the court on the motions to dismiss filed by the Election Defendants and Trump. [ECF Nos. 23 and 28]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the applicable procedures and the possible consequences if he failed to respond adequately to the motions to dismiss. [ECF Nos. 24, 30]. The motions having been fully briefed [ECF Nos. 33, 34, 41, 46, 47], they are ripe for disposition. Also before the court are Plaintiff's motions to amend/correct the amended complaint [ECF No. 36], for temporary restraining order and expedited preliminary injunction hearing consolidated with a preliminary bench trial on the merits [ECF No. 43], and for issuance of process [ECF No. 44].

---

[1] Plaintiff has not made clear if he is suing the SEC and Knapp separately or as one entity. [*See* ECF No. 19]. For the purposes of this motion, the court assumes he is suing both Election Defendants.

[2] Plaintiff has filed similar complaints in multiple other states. [*See* ECF No. 29 (notice of case list, listing 26 cases recently filed by Plaintiff against Trump)]. Plaintiff also previously filed suit against the Federal Election Commission ("FEC"), asking the court in part "to require the FEC to reject Mr. Trump's statement of candidacy on the basis that his alleged involvement in the events of January 6, 2021 . . . ." *Castro v. Fed. Election Comm'n*, No. 22-2176 (RC), 2022 WL 17976630, at *2 (D.D.C. Dec. 6, 2022), aff'd, No. 22-5323, 2023 WL 2899541 (D.C. Cir. Apr. 10, 2023). Plaintiff's complaint was dismissed for lack of standing, in addition to other reasons.

For the following reasons, the undersigned grants Plaintiff's motions to amend and for issuance of process [ECF Nos. 36, 44], directs Plaintiff to serve the SCGOP with the appropriate summons and complaint, and recommends the district judge grant Election Defendants' motion to dismiss in part and Trump's motion to dismiss in full, dismissing Plaintiff's Ballot Claim and Equal Protection Claim, but allowing Plaintiff's Filing Fee Claim to proceed against Elections Defendants and the SCGOP. [ECF Nos. 23, 28]. If the district judge accepts these recommendations, Plaintiff's motion for temporary restraining order will be rendered moot. [ECF No. 43].

I.    Background

In his amended complaint, Plaintiff's primary allegation is that Trump is disqualified from serving as President of the United States under Section 3 of the 14th Amendment to the United States Constitution. [ECF No. 19 ¶ 24]. Addressing his interest in bringing this lawsuit, Plaintiff alleges that he is "actively competing against [Trump] for the nomination of the Republican Party to pursue the Office of the Presidency in the general election in 2024," *id.*; that he is one of "only 162 Republican Party candidates for the Presidency," *id.* ¶ 34; that he will be "competing for the same political position" and "appealing to the same voter base" as Trump, *id.* ¶ 30; that he will allocate campaign finances to pursuing this class of voters, *id.*; that he

*See id.*

3

has "spoken to thousands of voters" who tell him they would vote for him if Trump is not a Republican Party candidate, *id.* ¶ 31; and that if Trump is on the ballot, it will inhibit his ability to secure votes and to raise funds, *id.* ¶ 33.

Plaintiff further alleges that South Carolina law codified at S.C. Code Ann. § 7-11-20 and § 7-11-70 does not permit him to be a petition candidate in South Carolina in the general election, making winning the primary his only path to the Republican nomination for President. *Id.* ¶ 9. He also complains about the portion of S.C. Code Ann. § 7-11-20 that permits political parties to charge a certification fee for candidates, arguing that the $50,000 filing fee set by the SCGOP for ballot access is unconstitutionally burdensome. *Id.* ¶¶ 10–11.

II.    Discussion

A.    Standard on Motion to Dismiss

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(1) where the court lacks subject-matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(1) examines whether a complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove jurisdiction, and the court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting

4

the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

A motion to dismiss under Rule 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). The court is "not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Edwards*, 178 F.3d at 244. Indeed, "[t]he presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion." *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001).

Pro se complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975). The mandated liberal construction

afforded to pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Nevertheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990).

B.    Analysis

1.    Ballot Claim and Plaintiff's Standing

The court first addresses Plaintiff's primary argument in this case—his Ballot Claim—and his standing to challenge Trump's presence on the South Carolina Republican primary ballot as a candidate in the 2024 Presidential election.

"Article III of the Constitution provides that federal courts may consider only '[c]ases' and '[c]ontroversies.'" U.S. Const. art. III, § 2. Thus, "a plaintiff seeking relief in federal court must first demonstrate that he has standing to do so, including that he has a personal stake in the outcome[.]" *Gill v. Whitford*, 138 S.Ct. 1916, 1923 (2018) (citation omitted).

To establish standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May

6

24, 2016). An injury in fact is "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (citations omitted). Second, "[t]raceability is established if it is 'likely that the injury was caused by the conduct complained of and not by the independent action of some third party not before the court.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir. 2000)). Lastly, to satisfy redressability, "a plaintiff "must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 189 (4th Cir. 2018) (citation omitted).

Turning to the first element, Plaintiff does not sufficiently allege injury in fact to maintain standing as to his Ballot Claim. A plaintiff alleging an "injury in fact" to his prospects as a political candidate must show that he is "able and ready" to apply for the political position in question. *See Carney v. Adams*, 141 S. Ct. 493, 495 (2020).[3] He also must "show that the defendants' actions have harmed his chances of winning an election." *Goldman v. Brink*,

---

[3] The court takes judicial notice that filing to appear on the SCGOP's primary ballot closed on October 31, 2023, and Plaintiff was one of 10 Republican candidates who filed and paid the applicable $50,000 fee. *See, e.g.,* https://www.southcarolinapublicradio.org/sc-news/2023-11-01/scgop-primarylist (last visited November 2, 2023). This information is a matter of public record that is not subject to reasonable dispute. *See, e.g., Phillips v.*

41 F.4th 366, 369 (4th Cir. 2022) (citations omitted).[4] Without showing that any of the actions complained of cause him competitive injury as a candidate, Plaintiff does not allege an injury that is "concrete and particularized, as well as actual or imminent," but rather one that is "conjectural or hypothetical." *Carney*, 141 S. Ct. at 498 (citation omitted).

Any injury Plaintiff alleges appears to be generalized, at best. "The injury in fact requirement precludes those with merely generalized grievances from bringing suit to vindicate an interest common to the entire public." *Friends of the Earth*, 204 F.3d at 156 (citation omitted); *Gill*, 138 S. Ct. at 1923 ("But a plaintiff seeking relief in federal court must first demonstrate that he has standing to do so, including that he has 'a personal stake in the outcome' distinct from a 'generally available grievance about government.'") (citations omitted)).

Plaintiff disagrees, alleging as follows:

Castro and Trump are not only competing for the same political position within the same political party but are also appealing to

---

*LCI Int'l, Inc.*, 190 F.3d 609, 617 (4th Cir. 1999) (considering news article).

[4] As stated by the lower court in *Goldman*, and affirmed by the Fourth Circuit, "[o]f course, candidates can show an injury in fact and possess Article III standing in some instances, such as when a candidate or his party demonstrate that a defendant's actions have harmed the candidate's chances of winning." *Goldman v. Brink*, C/A No. 3:21-420 (DJN), 2022 WL 2024745, at *12 (E.D. Va. June 6, 2022) (collecting cases), aff'd as modified, 41 F.4th 366, 368–69 (4th Cir. 2022) ("we agree with and adopted the well-crafted and reasoned analysis of the Standing to Sue Ruling"); *see also Nelson v. Warner*, 472 F. Supp. 3d 297, 304 (S.D.W. Va. 2020) (collecting cases).

the same voter base. Castro retains support from unions and his extensive experiences with union organizing is appealing to working class Americans. Similarly, Trump also does not appeal to big donors and most of his donations consist of donors giving small amounts. Consequently, Castro will be primarily targeting the same voters as Trump, and Castro will allocate a significant portion of his campaign finances to such cause.

In fact, throughout his campaigning efforts to date, Castro has spoken to thousands of voters who have expressed that they would vote for Castro only if Trump is not a presidential candidate as they maintain political loyalty to Trump.

A primary candidate has judicial standing to bring a claim challenging the eligibility of a fellow primary candidate for competitive injury in the form of a diminution of votes and/or fundraising if the primary candidate believes that the fellow primary candidate is ineligible to hold public office and to prevent actions irreconcilable with the U.S. Constitution.

Castro will further suffer irreparable competitive injuries if Trump, who is constitutionally ineligible to hold office, is able to attempt to secure votes in primary elections and raise funds. Trump's constitutionally unauthorized undertaking will put Castro at both a voter and donor disadvantage.

Trump, without this Court's intervention, will siphon off votes in violation of Section 3 of the 14th Amendment to the U.S. Constitution. There are only 162 Republican Party candidates for the Presidency of the United States thereby identifying the actual named individuals with particularity that his candidacy is injuring. By definition, this "particularizes" the injury.

[ECF No. 19 ¶¶ 30–34 (emphasis and footnotes removed)].

Plaintiff fails to allege any injury that is sufficiently individual and particularized to him to confer standing. His primary position appears to be that if he and Trump run against each other, that will necessitate harm to

Plaintiff in the form of lost votes and lost donations. However, saying it does not make it so, and Plaintiff has failed to offer sufficient allegations in support. For example, he has not identified a single voter who considers him as his or her "second choice" after Trump, particularly any voter in South Carolina, instead stating vaguely that he has spoken to "thousands of voters" who are presumably located somewhere in the United States. Plaintiff alleges he has support from unions, but does not identify which unions or if any are in South Carolina.[5] Plaintiff also makes allegations concerning donors and allocation of his campaign finances, but fails to identify any specific donor who would contribute to his campaign if Trump were not an option, and Plaintiff's financial records filed with the FEC show that he has almost no money.[6] These allegations fail to "nudge [Plaintiff's] claims across the line from conceivable to plausible" to resist dismissal, *Twombly*, 550 U.S. at 570, and at no point does Plaintiff allege either his ability to win the election or the "potential loss of an election." *See, e.g., Drake v. Obama*, 664 F.3d 774, 783 (9th Cir. 2011) (citation omitted).

---

[5] Plaintiff's claim of having union support is unimpressive in South Carolina, which has the lowest unionization rate in the United States, at 1.7%. https://www.bls.gov/opub/ted/2021/union-membership-rates-highest-in-hawaii-lowest-in-south-carolina-in-2020.htm. A court may take judicial notice of factual information located in postings on government websites. *Phillips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[6] https://www.fec.gov/data/candidate/P40007312/ (last visited October 31, 2023) (showing Plaintiff has received $678 in total contributions and has

This conclusion is buttressed by Plaintiff's testimony provided in another similar case he filed against Trump:

> Castro further acknowledges that he is, at best, a "longshot Republican Presidential candidate." Trump introduced evidence of Castro's filings with the Federal Election Commission, which show that Castro's campaign has no contributions and no expenditures. Further, Castro's campaign has not run or purchased any advertising in New Hampshire or any other state . . . . He also confirmed that his FEC filings show that his campaign has no contributors, other than himself, and almost no money. *Castro also agreed that a primary goal of his candidacy is to establish the impermissibility of Trump's presidency*, and that he has filed 27 lawsuits seeking to keep Trump's name off of the ballot in various states.

*John Anthony Castro v. New Hampshire Sec'y of State, David M. Scanlan, & Donald J. Trump*, C/A No. 23-416-JL, 2023 WL 7110390, at *2–3 (D.N.H. Oct. 27, 2023) (emphasis added, footnotes omitted).[7] In response to the above evidence, the court held as follows:

> To demonstrate an injury as a political competitor, a plaintiff must show that he has "a chance of prevailing in the election." . . . . Castro makes no attempt to demonstrate that he is actually competing with Trump for votes and contributions, as required under the operative competitor standing theory. The evidence shows that Castro has not campaigned in New Hampshire or elsewhere. Castro has not provided any evidence suggesting that he has voters or contributors in New Hampshire or elsewhere, or that he will benefit from voter or contributor defections from Trump to himself . . . . The weaknesses in Castro's theory of

---

spent $0).

[7] The court takes judicial notice of the record in Plaintiff's other cases. "We note that the most frequent use of judicial notice . . . is in noticing the content of court records." *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (internal quotations and citation omitted).

competitive injury do not stop there. His claimed injury is also speculative, as it depends on what voters and contributors—independent, third parties—*may* do if Trump's name is not listed on the New Hampshire primary ballot . . . . An injury based on speculation about the decisions of independent actors does not confer standing . . . .

Further, the evidence indicates that Castro is creating his own injury in order to manufacture standing to challenge Trump's eligibility to run for president. Indeed, by his own admission, Castro declared as a candidate and paid the filing fee to show the impermissibility of Trump's presidency. He asserts that one of his goals in the campaign is "to demonstrate his legal ingenuity, ability to effectuate a national litigation strategy with minimal resources (i.e. guerrilla lawfare), and demonstrate executive leadership capabilities." This practice of manufacturing standing to pursue a cause through litigation is not supported by the law . . . .

In sum, the evidence demonstrates that Castro is not competing and will not compete with Trump to win the New Hampshire primary, and for that reason, he is not a political competitor in the primary. Contrary to Castro's contention, he does not have a cognizable injury simply because his name is on the New Hampshire primary ballot, and he cannot manufacture standing by declaring his candidacy and paying the fee. For all of these reasons, Castro has not shown that he is suffering or would suffer an actual, competitive injury if Trump's name is listed on the New Hampshire Presidential primary ballot.

*Id.* at *5–6 (footnotes omitted).

Plaintiff argues here, as he did in New Hampshire, that he has "competitive injury" standing, relying solely on out-of-circuit case law. [*See, e.g.*, ECF No. 19 ¶ 27]. The court rejects Plaintiff's argument, for the reasons articulated above, and does not find persuasive his distinguishable case law, where this case law concerns "competitor standing," but in the context of, for

example, third-party structuring of campaign and other competitive environments, *see Shays v. Fed. Election Comm'n*, 414 F.3d 76, 85 (D.C. Cir. 2005)); *New World Radio, Inc. v. F.C.C.*, 294 F.3d 164, 170 (D.C. Cir. 2002), or where individuals have challenged campaign restrictions they themselves were not subject to, *see Gottlieb v. Fed. Election Comm'n*, 143 F.3d 618, 620–21 (D.C. Cir. 1998); *Fulani v. Brady*, 935 F.2d 1324, 1324 (D.C. Cir. 1991)); *see also Hassan v. Fed. Election Comm'n*, 893 F. Supp. 2d 248, 254 (D.D.C. 2012) ("Yet Hassan has not alleged sufficient facts to show that he will actually or imminently be the nominee of a major or minor political party (let alone the Democratic Party, which he specifies is his goal). Rather, he has only announced his intention to run, created an online presence, and filed a series of lawsuits. These actions are inadequate to establish that Hassan will imminently be nominated.").

Accordingly, the undersigned recommends the district judge grant the pending motions to dismiss, dismissing Plaintiff's Ballot Claim and dismissing Trump from this case where Plaintiff has asserted no other claim against him.[8]

---

[8] Given the recommendation above, it is unnecessary to address the arguments concerning traceability or redressability. *See, e.g., John & Jane Parents 1 v. Montgomery Cnty. Bd. of Educ.*, 78 F.4th 622, 629 n.4 (4th Cir. 2023). Additionally, the court need not address Trump's arguments that this court otherwise lacks subject matter jurisdiction because this court "lack[s] the power to decide the nonjusticiable political questions presented here" and

2.    Equal Protection Claim

As to his Equal Protection Claim, Plaintiff argues:

> The inconsistency of Presidential ballot access laws among the several states violates Plaintiff's right to equal protection under the law as guaranteed by the 14th Amendment to the U.S. Constitution. The U.S. Constitution's Election Clause[9] gives states no power over Presidential ballot access laws with regard to the general election and the inconsistency among the states violates Plaintiffs right to equal protection under the law, this Court has the power to set an interim national standard. In other words, even if South Carolina's general election ballot access laws are not constitutionally burdensome, the inconsistency among the states still renders them unconstitutional for violating Plaintiffs right to equal protection . . . .

> Plaintiff further asks this Court to declare all state Presidential ballot access laws as UNCONSTITUTIONAL based on inconsistency, which violates Plaintiff's right to equal protection as protected by the 14th Amendment to the U.S. Constitution.

---

that "the Fourteenth Amendment is not self-executing." [ECF No. 28 at 6–13]. Likewise, the court need not address Election Defendants' argument that, as a matter of law, they lack the power to disqualify Trump from the South Carolina Republican primary ballot. [ECF No. 23 at 7–9].

[9] The provision of the United States Constitution known as the Elections Clause states in part: "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof[.]" U.S. Const. art. I, § 4, cl. 1. The separate "Electors Clause" of the Constitution, entitled "Presidential Electors," states: "Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors . . . ." U.S. Const. art. II, § 1, cl. 2. Although separate constitutional provisions, the Electors Clause and Elections Clause share "considerable similarity." *Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 839 (2015) (Roberts, C.J., dissenting); *Foster v. Love*, 522 U.S. 67, 69 (1997) (characterizing Electors Clause as Elections Clauses' "counterpart for the Executive Branch"); *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 804–05 (1995) (noting that state's "duty" under Elections Clause "parallels the duty" described by Electors Clause).

[ECF No. 19 ¶¶ 8, 21 (emphasis removed)].

Plaintiff's Equal Protection Claim appears to challenge all Presidential ballot access laws in all states and asks this court to declare all such laws unconstitutional. The court declines to do so. As explained by the Supreme Court in assessing certain Ohio Presidential election laws:

> Although these rights of voters are fundamental, not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally-suspect burdens on voters' rights to associate or to choose among candidates. We have recognized that, "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). *To achieve these necessary objectives, States have enacted comprehensive and sometimes complex election codes.* Each provision of these schemes, whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends. Nevertheless, the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions.

*Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (emphasis added)).

Plaintiff cites no case law—nor is the court aware of any—in support of his sweeping arguments that states have no power over Presidential ballot access law nor that his rights are somehow infringed by variations in state Presidential ballot-access schemes. The court notes the Supreme Court's repeated direction concerning ballot access: that lower courts are to consider

ballot access schemes, created by individual states, in their entirety to determine constitutionality. A reviewing court must determine whether "the totality of the restrictive laws taken as a whole imposes a burden on voting and associational rights." *Williams v. Rhodes*, 393 U.S. 23, 34 (1968); *see also Storer v. Brown*, 415 U.S. 724, 737 (1974) (assessing California election laws applicable to individuals running for President, stating that "a number of facially valid election laws may operate in tandem to produce impermissible barriers to constitutional rights"); *Jenness v. Fortson*, 403 U.S. 431 (1971) (assessing Georgia election laws applicable to individuals running for President, upholding the specific ballot access requirements at issue after satisfying itself that other portions of Georgia's election laws ensured reasonably open access to the ballot); *Libertarian Party of Florida v. State of Florida*, 710 F.2d 790 (11th Cir.1983) (considering the relevant ballot access requirements together in determining whether a 3% signature requirement for minor parties to be placed on the general Presidential election ballot was constitutional).

Accordingly, the undersigned recommends the district judge dismiss Plaintiff's Equal Protection Claim.[10]

---

[10] Trump did seek dismissal of Plaintiff's Equal Protection Claim, and Election Defendants argue only that "Plaintiff has not properly stated a challenge to any laws the Elections Defendants are charged with enforcing," including where Plaintiff seeks the court to declare all state Presidential

3.    Filing Fee Claim

As to his Filing Fee Claim, Plaintiff alleges in full as follows:

S.C. Code § 7-11-10 creates various methods for a candidate to pursue the nomination of the Republican Party. The petition method found at S.C. Code § 7-11-70, however, only applies to an "office in this State." As such, S.C. Code § 7-11-70 does not apply to the Office of the Presidency of the United States. Hence, the 2024 Republican Presidential Primary is the only method available pursuant to S.C. Code § 7-11-20.

S.C. Code § 7-11-20 states that the political parties shall "set the date and the filing requirements, including a certification fee." In doing so, S.C. Code § 7-11-20 makes the South Carolina Republican Party a quasi-state actor under the 14th Amendment with regard to their function in setting the "certification fee."

The South Carolina Republican Party, in its role as a quasi-state actor, set the filing fee for access to the Republican Presidential Primary ballot at $50,000, which is an unconstitutionally burdensome fee not rationally related to the interest of avoiding ballot clutter or preventing frivolous candidacies. To put this into perspective, Texas, with a population 600% that of South Carolina, sets the fee at only 10% of that of South Carolina; $5000. The states of Arizona, Maryland, Michigan, Nebraska, and Nevada don't even have a fee if the candidate can show

---

ballot access laws as unconstitutional, based on inconsistency, "without articulating which provisions he considers to be 'Presidential ballot access laws,' or the entity he believes is charged with enforcing these laws." [*See* ECF No. 23 at 9]. To the extent that Election Defendants have not sought to dismiss Plaintiff's Equal Protection Claim, "[w]here the face of a complaint plainly fails to state a claim for relief, a district court has 'no discretion' but to dismiss it.'" *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed.1990); *Mitchell v. E–Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959) (observing that a motion to dismiss for failure to state claim "allows of no discretion in the usual sense" because "a complaint is either good or not good")).

national media coverage, and they have experienced no ballot clutter or frivolous candidacies . . . .

Plaintiff John Anthony Castro asks this Court to declare the South Carolina Republican Party's $50,000 fee as UNCONSTITUTIONAL and to issue an injunction to prevent the South Carolina Republican Party from enforcing it.

[ECF No. 19 ¶¶ 9–11, 20 (emphasis removed)].

As indicated above, the Supreme Court has directed lower courts to apply a global approach in assessing the constitutionality of ballot access schemes including any qualifying fee connected to ballot access. In *Lubin v. Panish*, the Court held that "in the absence of a reasonable alternative means of ballot access, a State may not, consistent with constitutional standards, require from an indigent candidate filing fees he cannot pay." 415 U.S. 709, 718 (1974); *see also Bullock v. Carter*, 405 U.S. 134, 149 (1972) (same); *Little v. Florida Dept. of State*, 19 F.3d 4, 5 (11th Cir. 1994) (holding that a filing fee as part of a ballot qualification scheme does not run afoul of the Constitution where an alternative qualifying method is also available).

Plaintiff's allegations indicate his belief that he is not eligible to be a petition candidate pursuant to S.C. Code Ann. § 7-11-70. As briefly noted by Election Defendants, and to the extent he so argues, Plaintiff is incorrect in that he is permitted to be a petition candidate for President on the general election ballot. *See, e.g.*, S.C. Code Ann. § 7-11-10 ("Nominations for candidates for the offices to be voted on in a general or special election may

18

be by political party primary, by political party convention, or by petition . . . .”); S.C. Code Ann. § 7-11-70 (“A candidate's nominating petition for any office in this State shall contain the signatures of at least five percent of the qualified registered electors . . . . The petition must be certified to the [SEC] in the case of national, state, circuit, and multicounty district offices . . . .”; S.C. Code Ann. § 7-19-90 (providing “there shall be printed on the ballot the names of the candidates for President and Vice President of each political party recognized in this State and the names *of any petition candidates* for President and Vice President.”) (emphasis added)).

However, Plaintiff has also indicated his belief that the only method available to him to be on the Republican primary ballot, as opposed to the general election ballot, is through the Republican Party's primary elections that require a $50,000 filing fee and do not provide for an alternative method to appear.

Neither Trump nor Election Defendants seek to dismiss this specific claim—a claim that is primarily directed at SCGOP, which has not yet been served in this case—and a claim that, unlike Plaintiff's Equal Protection Claim, is not frivolous on its face. *See, e.g., Bullock*, 405 U.S. at 149 (“By requiring candidates to shoulder the costs of conducting *primary elections* through filing fees and by providing no reasonable alternative means of access to the [primary] ballot, the State of Texas has erected a system that

19

utilizes the criterion of ability to pay as a condition to being on the ballot, thus excluding some candidates otherwise qualified and denying an undetermined number of voters the opportunity to vote for candidates of their choice. These salient features of the Texas system are critical to our determination of constitutional invalidity.") (emphasis added)).[11]

While the court may ultimately determine that Plaintiff fails to present compelling arguments under, for example, the First, Fourteenth, and Twenty-Fourth Amendments, the possibility of such an ultimate outcome does not mean that Plaintiff has failed to state a claim upon which relief may be granted warranting dismissal of this claim at this juncture, particularly, where here, no party has formally sought dismissal of this claim and the claim is not clearly frivolous.

---

[11] The *Bullock* Court also noted that the question presented in that case was whether a state law that prevents potential candidates for public office from seeking the nomination of their party *due to their inability to pay* a portion of the cost of conducting the primary election is state action that unlawfully discriminates against the candidates so excluded or the voters who wish to support them.

405 U.S. at 141 (emphasis added). Plaintiff has not alleged his inability to pay, only his unwillingness. However, this does not preclude the conclusion that Plaintiff has stated a claim upon which relief can be granted. *See, e.g., Coyne v. S.C. Sec'y of State*, C/A No. 3:15-3669-JFA-SVH, 2016 WL 4544364, at *7 (D.S.C. July 26, 2016) (recommending in part denial of SCGOP's motion to dismiss a constitutional challenge to the $40,000 filing fee to appear on the Republican primary ballot as a poll tax where plaintiff alleged unwillingness, not inability, to pay), report and recommendation adopted, C/A No. 3:15-03669-JFA-SVH, 2016 WL 4525454 (D.S.C. Aug. 30, 2016), and report and recommendation adopted, C/A No. 3:15-03669-JFA-SVH, 2016 WL 5424755

Accordingly, the undersigned recommends the district judge allow Plaintiff's Filing Fee Claim to proceed as to Election Defendants and the SCGOP, as discussed more below.

    4.    Plaintiff's Motion to Amend

Plaintiff has filed a motion to amend his amended complaint to clarify that he "is alleging a 42 U.S.C. 1983 claim against the South Carolina Elections Commission and the South Carolina Republican Party." [ECF No. 33 at 1;[12] *see also* ECF No. 41 at 2 (Election Defendants noting that "[t]he only substantive changes between Plaintiff's 'Second Amended Verified Complaint' and the currently operative Amended Complaint are the insertion of verbiage in Paragraph 1 that 'this cause of action arises under Section 3 of the 14th Amendment to the U.S. Constitution and *42 U.S.C. § 1983*,' ECF No. 33 at ¶ 1 (additional language emphasized), and a sentence in Paragraph 11

---

(D.S.C. Sept. 29, 2016).

[12] Trump's attorneys note, regarding certain statements made by Plaintiff in this filing, that "[a]s members of the bar concerned with civility in litigation," Plaintiff has evinced both "inappropriate and . . . repeated . . . indecorous behavior." [*See* ECF No. 42 at 2]. The court agrees and cautions Plaintiff to proceed in this case with civility on pain of being held in contempt, particularly where it appears that this behavior is ongoing. *See, e.g., Castro v. Warner*, C/A No. 2:23-00598, 2023 WL 7171462, at *2 (S.D.W. Va. Oct. 31, 2023) ("the Court cautions the Plaintiff to focus on factual and legal arguments, rather than personal attacks . . . . The Court's docket is not a social media feed, and any future filing with *ad hominem* attacks, inappropriate statements about individuals involved in this litigation, or other snide and malicious comments will be stricken from the record.").

alleging that the South Carolina Republican Party's candidate ballot fee 'is violative of 42 U.S.C. § 1983.' ECF No. 33 at ¶ 11.")].[13]

Leave to amend should be freely granted under Fed. R. Civ. P. 15(a), and amendments are generally accepted absent futility, undue prejudice, or bad faith. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). The court can deny a motion to amend a complaint "if amending the complaint would be futile, that is, 'if the proposed amended complaint fails to satisfy the requirements of the federal rules.'" *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted).

Considering Plaintiff's proposed amendments and construing his complaint liberally, Plaintiff seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 against Election Defendants and the SCGOP as to his Filing Fee Claim.

Election Defendants argue that "Plaintiff has not properly stated a challenge to any laws the Election Defendants are charged with enforcing,"

---

[13] Plaintiff's motion to amend was not filed in conformity with Fed. R. Civ. P. 15, which provides that "[a] party may amend its pleading [only] once as a matter of course . . . ." Fed. R. Civ. P. 15(a)(1), and "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Plaintiff is reminded that his pro se status does not obviate his obligation to comply with the Federal Rules of Civil Procedure.

that they are entitled to Eleventh Amendment immunity,[14] and that Plaintiff's proposed amendments to his amended complaint should not be allowed in that they are futile. [ECF No. 23 at 9, ECF No. 41 at 2].

Under the *Ex parte Young* exception to Eleventh Amendment immunity, a plaintiff may sue state officials who are acting in their official capacity, but only for prospective injunctive or declaratory relief designed to remedy ongoing violations of federal law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Election Defendants argue that the *Ex parte Young* exception to Eleventh Amendment immunity, however, is inapplicable here where Plaintiff does not allege that Election Defendants "violated any federal statue or constitutional provision, or took any action at all," and therefore has not alleged "ongoing violations of federal law." [*See* ECF No. 23 at 8].

---

[14] Under the Eleventh Amendment, federal courts are generally barred from hearing claims against a state or its agents, instrumentalities, and employees, unless the state has consented to the suit. *Fauconier v. Clarke*, 966 F.3d 265, 279 (4th Cir. 2020); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("It has long been settled that [the Eleventh Amendment's] reference to 'actions against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). Unless a state has consented to suit or Congress has waived a state's immunity pursuant to the Fourteenth Amendment, a state and its agencies may not be sued in federal or state court. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

However, Plaintiff challenges the imposition of the filing fee at issue, repeatedly citing S.C. Code Ann. § 7-11-20, which empowers the Election Defendants to "conduct the presidential preference primary in accordance with the provisions of this title and party rules . . . . ," including empowering the Election Defendants some discretion in the handling of the relevant filing fee as follows:

> Political parties may charge a certification fee to persons seeking to be candidates in the presidential preference primary for the political party. A filing fee not to exceed twenty thousand dollars, as determined by the State Election Commission, for each candidate certified by a political party must be transmitted by the respective political party to the State Election Commission and must be used for conducting the presidential preference primaries.

S.C. Code Ann. § 7-11-20(B)(2).

As stated by the Fourth Circuit, "[t]he *Ex parte Young* exception to Eleventh Amendment immunity applies only where a party 'defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional' has 'some connection with the enforcement of the act.'" *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014) (citing *Ex parte Young*, 209 U.S. at 157)). Here, sufficient connection between the Election Defendants and the allegedly unconstitutional filing fees exist to warrant Plaintiff's claim to proceed against the Election Defendants, as well as the SCGOP, at this time. *See, e.g., Bostic v. Schaefer*, 760 F.3d 352, 371 n.3 (4th Cir. 2014) (holding a

24

circuit court clerk bore the requisite connection to the enforcement of state marriage laws to be enjoined from enforcing them, because the clerk was responsible for granting and denying applications for marriage licenses).[15]

Accordingly, the undersigned grants Plaintiff's motion to amend and recommends that district judge allow Plaintiff's Filing Fee Claim to proceed against the Election Defendants and SCGOP.

### 5.    Plaintiff's Remaining Motions

Plaintiff filed his original complaint on September 7, 2023, and his amended complaint on October 2, 2023, in part adding the SCGOP as a defendant in this case. [ECF Nos. 1, 19]. On October 3, 2023, the court directed Plaintiff to complete a summons form for the SCGOP. [ECF No. 21]. Plaintiff filed the requisite summons, but filed, on the same day, the motion to amend addressed above, thereafter also filing an updated proposed summons. [*See* ECF No. 36]. Plaintiff has now filed a motion for issuance of process to the SCGOP. [ECF No. 44].

Plaintiff motion for issuance of process is granted, and he is directed to serve the SCGOP with the appropriate summons and his now operative complaint as found at ECF No. 36.

---

[15] Additionally, as noted above, Election Defendants did not seek to dismiss this specific claim and have not argued they have no connection with the imposition of the filing fee at issue.

Plaintiff has also filed an "emergency application for a temporary restraining order and expedited preliminary injunction hearing consolidated with preliminary bench trial on the merits" concerning his Equal Protection and Filing Fee Claims. [ECF No. 43].[16] If the district judge accepts the undersigned's recommendation regarding Plaintiff's Equal Protection Claim, Plaintiff's motion for temporary restraining order and request for preliminary injunction will be rendered moot as to this claim. *See, e.g., Yunsong Zhao v. Virginia Polytechnic Inst. & State Univ.*, 770 Fed. Appx. 136, 137 (4th Cir. 2019) ("Zhao's request for a preliminary injunction has been rendered moot by the district court's subsequent rejection of his SEVIS claims on the merits.").

As to Plaintiff's Filing Fee Claim, as stated above, the court takes judicial notice that Plaintiff has already paid the requisite fee, rendering the motion for temporary restraining order moot as to this issue as well, although Plaintiff's request for preliminary injunction as to this claim remains pending. *See, e.g., Peterson v. Nat'l Telecommunications & Info. Admin.*, 478 F.3d 626, 631 n.1 (4th Cir. 2007) ("Appellant also sought a temporary restraining order, but that request was rendered moot below when the

---

[16] Plaintiff previously filed the same motion regarding his Ballot Claim that the undersigned recommended the district judge deny. [ECF Nos. 14, 16]. That recommendation remains pending before the district judge.

disclosure requirement went into effect without a ruling from the district court on the TRO.").

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned grants Plaintiff's motions to amend and for issuance of process [ECF Nos. 36, 44], directs Plaintiff to serve the SCGOP with the appropriate summons and complaint, and recommends the district judge grant Election Defendants' motion to dismiss in part and Trump's motion to dismiss in full, dismissing Plaintiff's Ballot Claim and Equal Protection Claim but allowing Plaintiff's Filing Fee Claim to proceed against Elections Defendants and the SCGOP. [ECF Nos. 23, 28]. If the district judge accepts these recommendations, Plaintiff's motion for temporary restraining order will be rendered moot. [ECF No. 43].

IT IS SO ORDERED AND RECOMMENDED.

November 7, 2023                          Shiva V. Hodges
Columbia, South Carolina         United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

## Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir.1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).