UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| John Anthony Castro, | ) Civil Action No.: 3:23-cv-04501 |
| Plaintiff, | ) |
| v. | ) **SCGOP'S MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |
| South Carolina Elections Commission, | ) |
| Executive Director Howard M. Knapp, | ) |
| South Carolina Republican Party, and | ) |
| Donald John Trump, | ) |
| Defendants. | ) |

Defendant South Carolina Republican Party (the SCGOP or the Party), by and through the undersigned counsel, submits this motion for summary judgment under Federal Rule of Civil Procedure 56(c).[1] For the reasons below, there is no genuine issue of material fact, and the SCGOP is entitled to judgment as a matter of law on Plaintiff John Anthony Castro's "Filing Fee Claim."

### INTRODUCTION

This is one of many lawsuits Castro has filed across the country to try to prevent former President Donald John Trump from appearing on the ballot in 2024.

Castro filed his original complaint here on September 7, 2023, against only the "South Carolina Elections Commission,"[2] its Executive Director Howard Knapp, and Donald John Trump. ECF No. 1. After a series of substantive and procedural failures, on October 2, 2023, Castro purported to unilaterally amend his complaint for a second time to add a claim against the SCGOP. ECF No. 54. Although the Court instructed Castro to serve all Defendants in an October 3, 2023

---

[1] Under Local Civil Rule 7.04 (D.S.C.), "a supporting memorandum in not required" here.

[2] The agency is called the State Election Commission. *See* S.C. Code Ann. § 7-3-10(A).

text order, ECF No. 21, he waited a month and a half to attempt service on the SCGOP with the third iteration of his complaint. The Party received it in the mail on November 20, 2023.

Meanwhile, Castro played games behind the scenes with the certification fee, writing a $50,000 check from his and his wife's personal checking account—on which he issued a stop payment, ECF No. 58, at 6, before the SCGOP could even deposit it—all while professing to be a serious candidate for President. *See* Executive Director Evelen Hope Walker Aff. at ¶ 19. The SCGOP's bank rejected the check for insufficient funds. *Id.* at ¶ 22. Regardless of why the check did not clear, Castro fails to state a case or controversy within the Court's jurisdiction, and his contrived Filing Fee Claim lacks merit.

As of this filing, at least five district courts have dismissed Castro's meritless lawsuits for lack of standing.[3] The same result is required here. After all, parties "cannot manufacture standing merely by inflicting harm on themselves." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). And Castro's challenge to the SCGOP's decision on the certification fee for the presidential preference primary—"an initial policy determination" by a political party "of a kind clearly for nonjudicial discretion"—is one the Court cannot resolve with "judicially discoverable and manageable standards." *Baker v. Carr*, 369 U.S. 186, 217 (1962). Castro admits as much in his brief opposing Trump's motion to dismiss. ECF No. 74, at 9 n.16. Even so, the $50,000 certification fee—$20,000 of which goes to the State to administer the presidential preference primary, S.C. Code Ann. § 7-11-20(B)(2)—is constitutional.

---

[3] *E.g.*, *Castro v. Fontes*, No. 23-cv-01865-PHX-DLR, 2023 U.S. Dist. LEXIS 215802 (D. Ariz. Dec. 4, 2023); *Castro v. Sec'y of State Gregg Amore*, C.A. No. 23-405 JJM, 2023 U.S. Dist. LEXIS 214737 (D.R.I. Nov. 27, 2023); *Castro v. N.H. Sec'y of State*, Civil No. 23-cv-416-JL, 2023 U.S. Dist. LEXIS 192925 (D.N.H. Oct. 27, 2023), *aff'd*, *Castro v. Scanlan*, No. 23-1902, 2023 U.S. App. LEXIS 31016 (1st Cir. Nov. 21, 2023); *Castro v. Trump*, Case No. 23-80015-CIV-CANNON, 2023 U.S. Dist. LEXIS 194440 (S.D. Fla. June 26, 2023); *Castro v. FEC*, Civil Action No.: 22-2176 (RC), 2022 U.S. Dist. LEXIS 233880 (D.D.C. Dec. 6, 2022).

The SCGOP is entitled to judgment as a matter of law.

### STANDARD

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *U.S. ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations" or even a "scintilla of evidence" supporting its position. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rather, the nonmoving party "'must set forth specific facts showing that there is a genuine issue for trial'"—an "obligation [that] is particularly strong when the nonmoving party bears the burden of proof." *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 256). Indeed, Rule 56 "mandates" the entry of summary judgment against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Cray Commc'ns, Inc.*, 33 F.3d at 393 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also, e.g.*, *Bishop of Charleston v. Adams*, No. 2:21-cv-1093, 2022 WL 407405, at *5 (D.S.C. Feb. 10, 2022); *Cherochak v. Unum Life Ins. Co. of Am.*, 586 F. Supp. 2d 522, 526 (D.S.C. 2008). The Court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### ARGUMENT

As the Court previously recognized, *see* ECF No. 49, at 17–18, Castro's Filing Fee Claim against the SCGOP consists of four paragraphs:

> 9. S.C. Code § 7-11-10 creates various methods for a candidate to pursue the nomination of the Republican Party. The petition method

> found at S.C. Code § 7-11-70, however, only applies to an "office in this State." As such, S.C. Code § 7-11-70 does not apply to the Office of the Presidency of the United States. Hence, the 2024 Republican Presidential Primary is the only method available pursuant to S.C. Code § 7-11-20.
>
> 10. S.C. Code § 7-11-20 states that the political parties shall "set the date and the filing requirements, including a certification fee." In doing so, S.C. Code § 7-11-20 makes the South Carolina Republican Party a quasi-state actor under the 14th Amendment with regard to their function in setting the "certification fee."
>
> 11. The South Carolina Republican Party, in its role as a quasi-state actor, set the filing fee for access to the Republican Presidential Primary ballot at $50,000, which is an unconstitutionally burdensome fee not rationally related to the interest of avoiding ballot clutter or preventing frivolous candidacies. To put this into perspective, Texas, with a population 600% that of South Carolina, sets the fee at only 10% of that of South Carolina; $5000. The states of Arizona, Maryland, Michigan, Nebraska, and Nevada don't even have a fee if the candidate can show national media coverage, and they have experienced no ballot clutter or frivolous candidacies. This is violative of 42 U.S.C. § 1983.
>
> . . .
>
> 20. Plaintiff John Anthony Castro asks this Court to declare the South Carolina Republican Party's $50,000 fee as UNCONSTITUTIONAL and to issue an injunction to prevent the South Carolina Republican Party from enforcing it.

ECF No. 54, at ¶¶ 9–11, & 20.[4]

Putting aside the many inaccuracies in Castro's allegations and the fact that 48 U.S.C. § 1983 does not itself provide "'a source of substantive rights,' but merely provides 'a method for

---

[4] Because Castro sued the SCGOP only in connection with the Filing Fee Claim, the Party does not address the "Ballot Claim" or the "Equal Protection Claim," ECF No. 49, at 1–2, brought against the State Election Commission, Executive Director Knapp, and former President Trump. For the sake of judicial economy, the SCGOP incorporates by reference its codefendants' sound arguments on these claims. *See* ECF Nos. 61, 69 & 76. Suffice it to say, Castro's other claims fail as a matter of law because his stalking horse "candidacy" is insufficient to trigger federal jurisdiction, and he badly misreads the Constitution.

4

vindicating federal rights elsewhere conferred,'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citation omitted), the SCGOP is entitled to judgment as a matter of law for at least three reasons. *First*, Castro lacks standing. *Second*, his challenge to the SCGOP's determination on the appropriate amount for a certification fee to appear on the ballot in South Carolina's presidential *preference* primary is a nonjusticiable political question. *Third*, the fee is constitutional.

I.     *Castro lacks standing to challenge the certification fee.*

As courts have held throughout Castro's recent nationwide spree of meritless litigation, he lacks standing. To show constitutional standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An "injury in fact" is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'" *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

In deciding standing, the Court must consider Castro's reasons for bringing dozens of lawsuits in a host of different courts because they inform whether he has been injured and, if so, whether that injury will be redressed by a favorable decision. The answer to both questions is "no." As the District of New Hampshire recently explained, in part, using Castro's own words,

> the evidence indicates that Castro is creating his own injury in order to manufacture standing to challenge Trump's eligibility to run for president. Indeed, by his own admission, Castro declared as a candidate and paid the filing fee to show the impermissibility of Trump's presidency. He asserts that one of his goals in the campaign is "to demonstrate his legal ingenuity, ability to effectuate a national litigation strategy with minimal resources (*i.e.* guerrilla lawfare), and demonstrate executive leadership capabilities." This practice of manufacturing standing to pursue a cause through litigation is not supported by the law.

ECF No. 49, at 12 (quoting *Castro v. N.H. Sec'y of State*, Civ. No. 23-cv-416-JL, 2023 U.S. Dist. LEXIS 192925, at *11 (D.N.H. Oct. 27, 2023), *aff'd*, *Castro v. Scanlan*, No. 23-1902, 2023 U.S. App. LEXIS 31016 (1st Cir. Nov. 21, 2023)); *see also Castro v. Fontes*, No. CV-23-01865-PHX-DLR, 2023 U.S. Dist. LEXIS 215802, at *14 (D. Ariz. Dec. 4, 2023) ("Castro is not truly running for office. His campaign's raison d'être is to contrive standing . . . to pursue litigation to keep Trump off the ballot."). So too here. *See* Fed. R. Evid. 201(b) (allowing judicial notice).

Castro is not litigating to vindicate any constitutional injury based on the SCGOP's certification fee or even because of his desire to be a Republican Presidential candidate. Rather, he is litigating because he doesn't want Trump to be the Republican nominee. *See Castro v. Fontes*, 2023 U.S. Dist. LEXIS 215802, at *15 ("Castro is not genuinely competing for the Republican Party's presidential nomination; he is transparently and in bad faith attempting to manufacture an injury for the sole purpose of pursuing litigation, not to obtain redress for any concrete, non-speculative injury.").

Look no further than the allegations in his 40-page second amended complaint. Out of 138 long-winded paragraphs, only four are devoted to the SCGOP's certification fee. ECF No. 54, at ¶¶ 9–11, & 20. Whatever the outcome of the Filing Fee Claim may be, it is not going to redress his true objections.[5] Castro can't manufacture standing by throwing in an unrelated claim and choosing to pursue "a national litigation strategy" and incurring costs in doing so. *See Clapper*,

---

[5] And the Court should not entertain Castro's request to "declare all state Presidential ballot access laws as UNCONSTITUTIONAL based on inconsistency." *See* ECF No. 54, at ¶ 21. It has no jurisdiction to declare any other state's ballot access laws unconstitutional, *see* Fed. R. Civ. P. 12(h)(3), because Castro lacks standing to challenge those unspecified laws here. He fails to identify any concrete injury-in-fact traceable to any named Defendant stemming from other states' laws that could be redressed by this Court. *See Spokeo, Inc.*, 578 U.S. at 338 (outlining the familiar requirements for Article III standing); *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (stating "conclusory allegations . . . , without more, are insufficient to preclude granting [] summary judgment").

6

568 U.S. at 422 (finding lack of "Article III standing" because respondents "cannot manufacture standing by incurring costs in anticipation of non-imminent harm."); *see also Castro v. Fontes*, 2023 U.S. Dist. LEXIS 215802, at *13 ("Since losing his case in the District of New Hampshire, Castro has continued his transparent efforts to manufacture standing for the sole purpose of pursuing litigation by taking actions that attempt to remedy defects other courts identified as demonstrating his lack of standing.").

Nor can he show standing by complaining of a certification fee that he's suddenly unwilling to pay to salvage his "national litigation strategy." Importantly, Castro has never claimed he could not pay the certification fee due to indigence. *See* ECF No. 49, at 20 n.11 ("Plaintiff has not alleged his inability to pay, only his unwillingness."). In fact, in his objections to the second R&R, Castro stated, "It should also be noted that Plaintiff has not paid the $50,000 ballot access fee. After the judge in New Hampshire ruled that Plaintiff did not have standing despite having paid the ballot access fee, Plaintiff put a stop payment on the check." ECF No. 58, at 6. In other words, he intended to pay the fee—and remitted a $50,000 check to the SCGOP—but then "put a stop payment on the check" when the District of New Hampshire ruled he lacked standing. Notably, in the memo line on the check, Castro wrote "Unconstitutional Fee." Walker Aff. at ¶ 20. So Castro's unwillingness—not his inability—to pay is dispositive on the issue of standing too.

As the Supreme Court has noted, "[t]here may well be some rational relationship between a candidate's willingness to pay a filing fee and the seriousness with which he takes his candidacy." *Bullock v. Carter*, 405 U.S. 134, 145 (1972). In *Bullock*, the candidates "affirmatively alleged that they were unable, not simply unwilling, to pay the assessed fees." *Id.* at 146. In another filing fee case, the Supreme Court noted the petitioner attested he was indigent and "has no resources and earned no income whatever in 1972." *Lubin v. Panish*, 415 U.S. 709, 714 (1974). Given Castro's

7

chutzpah in multiple filings across the country, it is unsurprising that he has not alleged indigency prevents him from paying the SCGOP's $50,000 certification fee.

Heeding the Supreme Court's commentary on the issue, other circuits have considered non-indigence fatal to a party's ballot access or filing fee claim. In one case, the candidates were not indigent and paid the requisite filing fee under protest. *See Adams v. Askew*, 511 F.2d 700, 701 (5th Cir. 1975). Concluding the non-indigent candidates deserved no alternative method for ballot access, *id.* at 702–03, the Fifth Circuit found *Bullock* and *Lubin* instructive:

> Voters' rights are not infringed where a candidate chooses not to run because he is unwilling to comply with reasonable state requirements. They are no more affected by a candidate's unwillingness to pay a reasonable filing fee than they are when he refuses to comply with financial disclosure laws, or, for that matter, a reasonable petitioning requirement.

*Id.* at 703; *accord Biener v. Calio*, 361 F.3d 206, 215 (3d Cir. 2004) (following *Adams*, stating "candidates who were able, but simply unwilling, to pay a filing fee are not entitled to another route to the ballot").

The assigned Magistrate Judge, for her part, has noted the distinction between inability and unwillingness to pay "may be valid" in a prior case involving the SCGOP's certification fee. *See Coyne v. S.C. Sec'y of State*, No. 3:15-3669-JFA-SVH, at 11 (D.S.C. Sept. 20, 2017), *R&R adopted*, No. 3:15-cv-03669-JFA (D.S.C. Oct. 12, 2017). The Court was right there, and the distinction is valid here. Castro cannot bring a constitutional challenge against a certification fee that has not harmed him, for he does not have "'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975).

As the District of Arizona stated in finding Castro lacked standing there, "[i]f Article III's injury-in-fact requirement is to serve as a meaningful restraint on judicial power, it must allow

federal courts to recognize such shenanigans for what they are—an attempt to manufacture a controversy . . . to pursue a political agenda through litigation." *Castro v. Fontes*, 2023 U.S. Dist. LEXIS 215802, at *13–14.  The Court should dismiss Castro's claim against the SCGOP because he lacks standing to pursue his "guerrilla lawfare" here.  *See* Fed. R. Civ. P. 12(h)(3).

II.     The Court should decline to weigh in on this nonjusticiable political question.

"Political squabbles are not as easily resolved in . . . courts as are some other disputes." *Wymbs v. Republican State Exec. Comm. of Fla.*, 719 F.2d 1072, 1076 (11th Cir. 1983).  In 1972, the Supreme Court predicted the challenging constitutional questions that would accompany judicial intervention in political intraparty disputes, including justiciability, whether party action is state action, the reach of the Due Process Clause, and the vital rights of freedom of association guaranteed by the First Amendment.  *See O'Brien v. Brown*, 409 U.S. 1, 4 (1972) (per curiam).

Indeed, "political belief and association constitute the core of those activities protected by the First Amendment."  *Elrod v. Burns*, 427 U.S. 347, 356 (1976).  "Any interference with the freedom of a party is simultaneously an interference with the freedom of its adherents."  *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957).  For this reason, the Supreme Court has "always treated government assertion of control over the internal affairs of political parties—which, after all, are simply groups of like-minded individual voters—as a matter of the utmost constitutional consequence."  *Morse v. Republican Party of Va.*, 517 U.S. 186, 241 (Scalia, J., dissenting); *accord Democratic Party of U.S. v. Wisc. ex rel. LaFollette*, 450 U.S. 107, 121–22 (1981); *Cousins v. Wigoda*, 419 U.S. 477, 487–88 (1975); *O'Brien*, 409 U.S. at 4–5.

Put simply, "'political parties' government, structure, and activities enjoy constitutional protection' and [courts] have declined to interfere with those functions."  *Coyne*, 2016 U.S. Dist. LEXIS 134395, at *14 (D.S.C. Sep. 29, 2016) (quoting *Timmons v. Twin Cities Area New Party*,

9

520 U.S. 351, 358 (1997)). "[T]he [Supreme] Court has repeatedly admonished the Courts that 'judicial intervention in this area has traditionally been approached with great caution and restraint.'" *Bachur v. Democratic Nat'l Party*, 836 F.2d 837, 841 (4th Cir. 1987) (quoting *O'Brien*, 409 U.S. at 4). And "a court[] may not constitutionally substitute its own judgment for that of the Party." *La Follette*, 450 U.S. at 123–24. "That principle applies with particular force . . . in the process of nominating candidates for President and Vice-President of the United States." *Boston Correll v. Herring*, 212 F. Supp. 3d 584, 609 (E.D. Va. 2016). After all, courts "have no constitutionally mandated role in the great task of the selection of Presidential and Vice-Presidential candidates." *Cousins*, 419 U.S. at 489–90.

While courts have held that filing fees for primary elections required by state law may constitute "state action," *Bullock*, 405 U.S. at 139, the same does not hold true for a private political party's unilateral decision[6] to hold a presidential preference primary (PPP) and to impose and to set a certification fee for its candidates. To be sure, the Supreme Court has recognized a difference between action by "state law rather than action by a political party." *Id.* at 140 n.16. In *Bullock*, the plaintiffs challenged Texas' statutorily required filing fee as unconstitutional. *Id.* at 137 ("Under the Texas statute, payment of the filing fee is an absolute prerequisite to a candidate's participation in a primary election."). The State defendants argued that "not every aspect of a party primary election must be considered 'state action' cognizable under the Fourteenth Amendment." *Id.* at 140 n.16. Although the Supreme Court ultimately declined to consider the issue because the challenge there "concerned [] the constitutionality of a state law rather than action by a political party," *Id.*, it is clear political party action cannot automatically be considered "state action."

---

[6] *See* S.C. Code Ann. § 7-11-20(B)(1) (stating a political "party wishing to hold a presidential preference primary may do so in accordance with the provisions of this title and party rules").

As one court put it, the cases "in which the Supreme Court overturned a series of increasingly subtle tactics employed to exclude blacks from participating in the Texas Democratic Party's candidate selection process, do not stand for the proposition that all actions of political parties constitute state action without regard to the surrounding circumstances." *Republican Party of Conn. v. Tashjian*, 599 F. Supp. 1228, 1232 (D. Conn. 1984).

Courts that have weighed in on filing/certification fee issues have done so when the respective state, not a political party, required the fee. *See, e.g.*, *Bullock*, 405 U.S. 134 (filing fee required by Texas state law); *Lubin*, 415 U.S. 709 (filing fees required by various California state statutes); *Adams*, 511 F.2d 700 (filing fee required by Florida state statutes); *Belitskus v. Pizzingrilli*, 343 F.3d 632 (3d Cir. 2003) (filing fee required by Pennsylvania state statutes). In those cases, it was easier to discern "state action" without too many mental jumping jacks.

But the opposite is true here. While Castro takes issue with the SCGOP's $50,000 certification fee, he does not challenge the statutorily required filing fee of $20,000 for each candidate that "must be transmitted by the responsive political party to the State Election Commission and must be used for conducting the presidential preference primaries." S.C. Code Ann. § 7-11-20(B)(2). Therefore, he is not challenging any state law or state action.

Castro nevertheless contends—without citing any case law—the SCGOP is a "quasi-state actor" because the General Assembly in section 7-11-20(B)(2) provided the SCGOP "shall 'set the date and the filing requirements, including a certification fee.'" ECF No. 54, at ¶ 10. That is not what the statute says. Section 7-11-20(B)(2) gives political parties, here the SCGOP, the option to charge a certification fee to PPP candidates if it chooses to hold a PPP. The statute specifically states political parties "may" charge such a fee. The only fee that is statutorily required here is the $20,000 filing fee that must be paid for each candidate *by the SCGOP* to the State Election

11

Commission. In deciding to charge and set the certification fee, the SCGOP did not act as a "quasi-state" actor. It acted as a political party coordinating its PPP. Castro even concedes that case law undoubtedly provides that "the decision of a private political party constitutes a 'political decision.'" ECF No. 74, at 9 n.16.

That point is important too. The certification fee is for the SCGOP's presidential *preference* primary. The purpose of the SCGOP holding a PPP is to allow South Carolina GOP voters to express their *preference* for a presidential candidate. And even then, state delegates at the National Convention are only bound by the winner of the South Carolina PPP on the first ballot if the candidate received a majority of votes. In all other scenarios, the decision is left to the delegates. Thus, the SCGOP's PPP—including the certification fee—is inherently intertwined with the Party's internal political preferences.

In other words, the SCGOP's decision on the certification fee for the PPP is an "initial policy determination" "of a kind clearly for nonjudicial discretion," *Baker*, 369 U.S. at 217, that the General Assembly has left to the discretion of political parties. *See* S.C. Code Ann. § 7-11-20(B)(2). Castro's challenge is one the Court cannot resolve with "judicially discoverable and manageable standards." *Baker*, 369 U.S. at 217. Notably, he does not even try to present a framework for the Court to determine how much is too much or what amount could accomplish the Party's political objectives. Nor has he demonstrated the Party's "conduct, as alleged, has amounted to, or would constitute, state action." *Wymbs*, 719 F.2d at 1077. "[C]ourts have hesitated to find state action when . . . racial discrimination is not involved," *id.*, and the Court "may not interfere on the ground that [it] view[s] a particular expression as unwise or irrational," *LaFollette*, 450 U.S. at 123–24.

Under these circumstances, the Court should decline to weigh in on this nonjusticiable political question and grant summary judgment in favor of the SCGOP.

III.     *The certification fee is constitutional.*

In all events, the SCGOP's political decision to charge $50,000 for candidates to appear on the First in the South presidential *preference* primary comfortably passes constitutional muster. As an initial point, Castro's non-indigence is an important consideration. "[O]nly suspect classes and fundamental rights receive intermediate or strict scrutiny," and "[t]he right to run for office has not been deemed a fundamental right." *Biener*, 361 F.3d at 215 (citing *Bullock*, 405 U.S. at 142–43). Castro is not a member of a suspect class. Nor has he stated he is unable to pay the certification fee. Thus, as Castro seems to recognize, *see* ECF No. 43, at 3, the rational basis test applies here, and the SCGOP's certification fee need only be rationally related to serving a legitimate state objective.[7]  It is.[8]

As explained above, the General Assembly gave political parties the right to "charge a certification fee to persons seeking to be candidates in the presidential preference primary for the political party." S.C. Code Ann. § 7-11-20(B)(2). And $20,000 per candidate must be transferred to the State Election Commission as a filing fee and to cover costs associated with conducting the

---

[7] *See* ECF No. 54, at ¶ 11 (alleging the certification fee is "not rationally related to the interest of avoiding ballot clutter or preventing frivolous candidacies").

[8] Castro doesn't even try to argue the merits. He just says "there is simply no question that a $50,000 filing fee is unconstitutionally burdensome and not rationally related to any legitimate *state* interest, such as preventing ballot clutter and frivolous candidacies." ECF No. 43, at 6.

statewide PPP.[9] S.C. Code Ann. § 7-11-20(B)(2) ("A filing fee not to exceed twenty thousand dollars, as determined by the State Election Commission, for each candidate certified by a political party must be transmitted by the respective political party to the State Election Commission and must be used for conducting the presidential preference primaries."). Castro doesn't directly challenge the $20,000 filing fee, but as a practical matter, $20,000 of the Party's certification fee covers the filing fee. The filing fee collected by the State Election Commission is rationally related to a host of legitimate state interests, including "relieve[ing] the State treasury of the cost of conducting the primary elections," *Bullock*, 405 U.S. at 147, and others discussed below.

The remaining $30,000 is also rationally related to valid state interests. Regulating the number of candidates is a valid state interest. As the Supreme Court acknowledged in *Lubin*, the "interest in keeping ballots within manageable, understandable limits is of the highest order." 415 U.S. at 715 (citing *Bullock*, 405 U.S. at 144–45). The Supreme Court even stated "[t]hat 'laundry list' ballots discourage voter participation and confuse and frustrate those who do participate is too obvious to call for extended discussion." *Id.* But that's not all. "[A] State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies."[10] *Bullock*, 405 U.S. at 145 (citing *Jenness v. Fortson*, 403 U.S. 431, 442 (1971)). That is especially true where, as here, the election at issue is the presidential *preference* primary.

---

[9] This is precisely the case the Supreme Court said it *was not* considering in *Bullock*, noting "[t]his would be a different case if the fees approximated the cost of processing a candidate's application for a place on the ballot, a cost resulting from the candidate's decision to enter a primary." 405 U.S. at 148 n.29. In that case, unlike in this case, "importantly, the costs [did] not arise because candidates decide to enter a primary or because the parties decide to conduct one, but because the State [], as a matter of legislative choice, directed that party primaries be held." *Id.* at 148.

[10] *Cf. Castro*, 2023 U.S. App. LEXIS 31016, at *8 ("Castro admitted that his campaign, to date, had employed no staff in New Hampshire or any other state, had run no advertisements in New Hampshire or any other state, and had engaged in no campaign activities in New Hampshire or any other state 'apart from lawsuits' similar to this one.").

14

The Third and Fifth Circuits have held these interests sufficient to meet the rational basis test—the lowest threshold for constitutional scrutiny. *See Biener*, 361 F.3d at 215 ("Keeping the ballot manageable is an interest sufficient to meet the low standard of review."); *Adams*, 511 F.2d at 704 ("The fee requirement withstands constitutional attack under the rational basis test. Requiring a fee of nonindigent candidates is a rational means of furthering the state's interests in regulating the size of the ballot, avoiding voter confusion and clogging of election machinery, assuring that the winner is the choice of at least a strong plurality of voters while avoiding runoff elections, limiting the ballot to serious candidates, and defraying expenses.").

What is more, as explained in SCGOP Executive Director Evelen Hope Walker's affidavit, the remaining $30,000 also allows the SCGOP to cover costs incurred by the Party associated with voter outreach, promotion and advertising, party building, and other legitimate political activities associated with the PPP—activities that necessarily involve internal Party decisions. *See* Walker Aff. at ¶¶ 4–13. Importantly, South Carolina's PPP is the "First in the South." *Id.* at ¶ 4. As in the past, it will garner significant national and local media attention that will require attention on many fronts for the SCGOP. The SCGOP sponsors many events and media releases to prepare for and promote the PPP.

Taking the State's interests for the filing fee together with the valid political reasons for the certification fee—especially considering the importance of the PPP to South Carolina and the Nation—the certification fee is rationally related to several legitimate state interests.

## CONCLUSION

In sum, the Court lacks jurisdiction to issue a declaratory judgment adopting Castro's misguided view of the law. And he is not entitled to a mandatory preliminary injunction. *See* ECF No. 79, at 1–18. The Court should therefore grant summary judgment in favor of the SCGOP on

the Filing Fee Claim, terminate Castro's motion for TRO and preliminary injunction as moot, dismiss his second amended complaint without leave to amend, and grant such further relief it deems just and proper.

Respectfully submitted,

s/Robert E. Tyson, Jr.
Robert E. Tyson, Jr. (7815)
Vordman Carlisle Traywick, III (12483)
Sarah C. Frierson (13825)
ROBINSON GRAY STEPP & LAFFITE, LLC
Post Office Box 11449
Columbia, South Carolina 29211
(803) 929-1400
rtyson@robinsongray.com
ltraywick@robinsongray.com
sfrierson@robinsongray.com

Karl S. Bowers, Jr. (7716)
BOWERS LAW OFFICE, LLC
Post Office Box 50549
Columbia, South Carolina 29250
butch@butchbowers.com
(803) 753-1099

*Counsel for Defendant South Carolina Republican Party*

Columbia, South Carolina
December 14, 2023